IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TEON HOGAN, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV368 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| COX COMMUNICATIONS, L.L.C., | ) | |
| a foreign limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's motion for summary judgment. Filling No. 33. Plaintiff filed an amended complaint, Filling No. 18, alleging that he is a black male who has been discriminated against in employment on the basis of race in violation of 42 U.S.C. § 1981. Plaintiff also alleges a tortious interference with a business relationship under Nebraska state law. After careful review of the record, briefs in support of and in opposition to the motion, the supporting evidence, and the relevant case law, the court concludes the motion for summary judgment should be granted.

**Facts**

The plaintiff, Teon Hogan, is an African-American male hired by the defendant, Cox Communications, on a part-time basis beginning in the summer of 1989. On or about January 26, 2002, the plaintiff asked his supervisor, Tom Stokes, if he could leave work in order to prevent other employees from saying he was "hung over" and noticing the smell of alcohol on him. (Hogan Depo. 26:11-22.) Thereafter, he met with his direct supervisor, Lisa Turner, where he talked about the divorce he was going through and the reasons for his drinking. (Hogan Depo. 27:12-19.) Additionally, the plaintiff mentioned to Turner that he "should probably seek some help." (*Id.*) After discussing the issue, the plaintiff and defendant agreed the plaintiff should seek help for his drinking problem through an

Employee Assistance Program ("EAP"). The defendant informed the plaintiff that failure to maintain compliance with the EAP would result in his termination. After attending several counseling sessions, the plaintiff ceased to attend feeling he had addressed his problems and fearing that the cost of the counseling session would not be covered by the health insurance provided by the defendant. Subsequently, the defendant terminated the plaintiff for failure to maintain compliance with the EAP.[1] Defendant terminated the plaintiff from his employment as a full-time dispatch supervisor, on April 5, 2002. The defendant alleges the plaintiff failed to comply with the EAP condition of employment as the cause for termination.

After being terminated, the plaintiff claims to have sought and gained employment with a subcontractor of the defendant, Pioneer Communications (Pioneer). According to plaintiff, however, Pioneer allegedly rescinded its job offer after contacting the plaintiff's former supervisor. Plaintiff claims that Pioneer cited a "conflict of interests" with the defendant as its reason for not hiring the plaintiff. Plantiff filed this lawsuit on August 5, 2005.

## Standard of Review

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *McAllister v. Transamerica*

---

[1] While working for the defendant, the plaintiff had a number of discipline problems. In February of 1998, defendant reprimanded plaintiff for sending a sexually explicit e-mail. (Hogan Depo. 64:7-65:1.) Plaintiff also received a verbal warning for misuse of a company cell phone and insubordination for leaving work early, against a supervisor's orders. (Hogan Depo. 66:23-67:6; 67:7-68:18.) Plaintiff also received a written warning for a statement made to a female co-worker that violated the defendant's sexual harassment policy. (Hogan Depo. 68:19-69:16.)

*Occidental Life Ins. Co.,* 325 F.3d 997, 999 (8th Cir. 2003). When making this determination, the court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, the court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986); *see also Johnson v. Crooks*, 326 F.3d 995, 1007-08 (8th Cir. 2003).

The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248). Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of their claim. *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e) provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*See* Fed. R. Civ. P. 56(e).

A party seeking summary judgment bears the responsibility of informing the court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

3

answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657 (8th Cir. 1997) (quoting *Celotex*, 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")). In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997) (quoting Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings; but, rather, must show specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998).

Summary judgment motions must be carefully used in an employment discrimination case, and the court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997). However, summary judgment is appropriate when there is no factual dispute on an essential element of a claim. *Id.* at 1267-68.

## Discussion

**I. Claim of Racial Discrimination**

**A. Prima Facie Case**

The analysis used in a Title VII case, 42 U.S.C. § 2000, is also applicable to a § 1981 claim. *Leiting v. Goodyear Tire & Rubber Co.*, 117 F. Supp.2d 950, 955 (D. Neb. 2000). Defendant contends that the plaintiff has failed to state a cause of action because he cannot establish any evidence of an intent to discriminate on the part of the defendant

4

under the burden-shifting analysis of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1972).

A prima facie case of discrimination requires the plaintiff to establish that he 1) is a member of a protected class; 2) was qualified to perform his job; 3) suffered an adverse employment action; and 4) was treated differently than similarly situated people. *See Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (*citing Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993). If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves*, 530 U.S. at 143. The ultimate burden of persuasion remains with the plaintiff throughout the case.

The plaintiff in the case at bar is a black male and, therefore, a member of a protected class. The plaintiff's termination is an adverse action thereby fulfilling the third element of the prima facie case. The two remaining issues, (1) whether plaintiff was qualified to perform his job, and (2) whether defendant treated plaintiff differently than similarly situated people, must be established in order for the plaintiff to fulfill his burden of a prima facie case.

### 1. Qualified to Preform the Job

Section III.B. of the defendant's employee hand book states:

> No alcoholic beverage will be brought onto or consumed on company property except as may be authorized by the company. Any employee may not work or report to work under the influence of an alcoholic beverage. Violation of this rule will result in discipline up to termination of the employee or employees involved.

A qualification of employment with the defendant is the requirement not to report to work under the influence of an alcoholic beverage.  On or about January 26, 2002, the plaintiff reported to work suffering from the effects of over-consumption of alcohol.  Both Tom Stokes and Lisa Turner, supervisors of the plaintiff, believed that on the day in question alcohol impaired plaintiff's ability to work.  (Turner Depo. 15:11-19; Stokes Depo. 23:15-24:21.)

As a result of the plaintiff's self-described drinking problem, the defendant required that he enlist and comply with the EAP.  Continued compliance with the EAP became a condition of the plaintiff's employment with the defendant.  However, after some time, the plaintiff discontinued his participation in the EAP.  The court finds that continued participation in the EAP was a required qualification for his continued employment.  Once the plaintiff ceased to comply with the EAP, he was no longer qualified to perform his job with the defendant.  As a result, the plaintiff has failed to prove the second element of the prima facie case.

### 2. Similarly Situated Co-Workers

The plaintiff contends that while defendant allegedly terminated him for failure to comply with the EAP, other white employees, also having alcohol problems, were never required to enter into the EAP or terminated as a result of their failure to comply with the EAP.  The plaintiff asserts that two other employees, Deanna Kahl and Nick Griger, both of whom are white, should be compared with him.  The plaintiff must show that either Ms. Kahl or Mr. Griger dealt with the same supervisor, had been subject to the same standards or engaged in the same conduct as the plaintiff.  See *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004), citing *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).  Plaintiff must show that employees who were "similarly situated in all respects"

to him were treated differently by the defendant. *Phillip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005); *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003). *But see*, *Rodgers v. U.S. Bank*, 417 F.3d 845, 851 (8th Cir. 2005) (describes split in Eighth Circuit concerning the standard for determining whether employees are similarly situated, depending on whether it is applied at the prima facie stage or the pretext stage). However, whether the court uses a higher or lower threshold in determining comparable employees is not issue dispositive in this case, as the outcome is the same under either approach.

The record presents no evidence to support the plaintiff's claim that Ms. Kahl and Mr. Griger are similarly situated to the plaintiff. The plaintiff offers no evidence that either Ms. Kahl or Mr. Griger has an alcohol problem that has been reported to management or that either sought help from management for such a problem. The plaintiff points to an incident in which Mr. Griger drank too much at a company party resulting in a verbal reprimand from his superior as evidence of Mr. Griger's drinking problem. However, a close comparison of the plaintiff's offense and Mr. Griger's incident reveal significant differences. The consumption of alcohol by Mr. Griger occurred only once at a company party, which took place off company grounds and not during working hours. Conversely, the plaintiff's offense involved him arriving at work, on company grounds, during his scheduled work shift, suffering from the effects of over-consumption of alcohol and, in turn, informing his supervisor of this fact and the fact that he had a drinking problem. The plaintiff offers no evidence of his similar situation to Ms. Kahl other than an unsubstantiated claim that she has a drinking problem.

Based on the evidence, the court does not consider these employees comparable to the plaintiff. See *Cherry v. Ritenour School District*, 361 F.3d 474, 479 (8th Cir. 2004) (employees must be similarly situated for comparison purposes). Accordingly, the plaintiff

has failed to meet his burden of showing the defendant treated him differently than similarly situated employees, thereby failing to meet element four of his prima facie case.

### B. Pretext

Although the plaintiff has failed to meet his burden of establishing his prima facie case, the court will assume that, in the alternative, the plaintiff established a prima facie case of race discrimination. The burden would then shift to the defendant to articulate a nondiscriminatory reason for discharging the plaintiff. *Reeves*, 530 U.S. at 143. The defendant has met this burden. In an effort to promote safety and an alcohol-free work place, the defendant has established a policy against employees reporting to work under the influence of alcohol. Upon arriving at work suffering from consumption of alcohol, the plaintiff informed his supervisor of his drinking problem; thereupon, the plaintiff agreed to enter into an EAP as a condition of his continued employment with the defendant.

By his own admission, the plaintiff failed to comply with the EAP by missing a scheduled appointment and discontinuing his treatment, after he no longer felt the need to attend his treatment sessions. (Hogan Depo: 39:19-40:1, 42:19-25.) After being informed that the plaintiff discontinued attendance at treatment sessions, the defendant confronted the plaintiff, asking him to provide evidence that he was in compliance with the EAP. After the plaintiff failed to provide this evidence, defendant terminated plaintiff for failing to comply with the EAP, an agreed-to condition of his continued employment.

Defendant has articulated a nondiscriminatory reason for terminating the plaintiff, namely, his failure to comply with the EAP. Absent another reason, the court is not to sit as a super personnel department to oversee management decisions. See *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136-37 (8th Cir. 1999). Plaintiff's failure to comply with the EAP is a

nondiscriminatory reason for terminating the plaintiff. Therefore, the defendant has fulfilled its burden of articulating a nondiscriminatory reason for discharging the plaintiff.

If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff to prove that the employer's proffered reason is a pretext for intentional discrimination. *Reeves*, 530 U.S. at 143. The plaintiff argues that defendant's handling of Mr. Griger's incident is proof of pretext, arguing the defendant did not follow Section III.B of its drug and alcohol policy. As discussed above, Mr. Griger's one-time incident away from company property and not during working hours is distinguishable from the case at bar. The two situations are not comparable.

Under Section III.B., the defendant could have chosen to terminate the plaintiff upon his arrival at work under the influence of alcohol. However, the defendant chose instead to offer help to the plaintiff in the form of the EAP. The defendant's leniency and sensitivity to the plaintiff's difficult situation only serves to discredit any claim that the defendant intended to discriminate against the plaintiff. Proof of pretext requires a showing of intent to discriminate on the basis of race of which the plaintiff provides none. The court has carefully reviewed the record and concludes that there is insufficient evidence to submit this claim to a jury.

## II. Tortious Interference with a Business Relationship

Under Nebraska law, in order to prove a claim of tortious interference of a business relationship, the plaintiff must show: (1) the existence of a valid business relationship or expectancy, (2) knowledge by the person who interfered with the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party

whose relationship or expectancy was disrupted. *Macke v. Pierce*, 661 N.W.2d 313, 317 (Neb. 2003); *Pettit v. Paxton*, 583 N.W.2d 604, 609-610 (Neb. 1998) (citation omitted).

The plaintiff alleges that after being terminated, he gained new employment as a dispatcher with Pioneer Communications, a subcontractor of the defendant. After being hired but before he began employment, the plaintiff argues that Pioneer rescinded its job offer allegedly after Pioneer spoke with the plaintiff's former supervisors employed with the defendant.

The plaintiff offers no evidence, other than his personal testimony, to establish the prima facie case of a tortious interference of a business relationship on the part of the defendant. Conversely, the defendant offers the affidavit of the President of Pioneer Communications, Mark Roxburgh, who stated that at the time of the plaintiff's alleged hiring Pioneer was in the process of dissolving its dispatch operations and not hiring new dispatchers. (Roxburgh Affidavit, ¶ 4, 5.) Furthermore, the defendant provides the affidavit of Nick Eby, the manager of Pioneer Communications, whom the plaintiff alleges offered him a job. Mr. Eby's affidavit states that at no time did he ever offer the plaintiff a job with Pioneer Communications. (Eby Affidavit, ¶ 4.)

"'Liability under a tortious interference theory cannot be predicated upon speculation, conjecture, or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis.'" *Wash Solution, Inc., v. PDQ Mfg., Inc.,* 395 F.3d 888, 896 (8th Cir. 2005) (quoting *Mueller v. Abdnor*, 972 F.2d 931, 938 (8th Cir. 1992)). The plaintiff fails to present any evidence to establish a prima facie case of tortious interference with a business relationship or to otherwise support such a claim. The court concludes, therefore, that summary judgment must be granted.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 33, is granted. A separate judgment shall be entered in accordance with this memorandum and order.

DATED this 9th day of December, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge